**UNPUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

STAN WHITTEN; TONY DEADWYLER;
KEVIN NALLEY,

*Plaintiffs-Appellants,*

v.

THE CITY OF EASLEY, SOUTH
CAROLINA,

*Defendant-Appellee.*

No. 02-1445

Appeal from the United States District Court
for the District of South Carolina, at Anderson.
Henry M. Herlong, Jr., District Judge.
(CA-01-979-8-20)

Argued: January 22, 2003

Decided: April 9, 2003

Before WIDENER and GREGORY, Circuit Judges, and
HAMILTON, Senior Circuit Judge.

---

Affirmed by unpublished per curiam opinion.

---

## COUNSEL

**ARGUED:** Thomas Bailey Smith, SMITH LAW FIRM, PA, Easley,
South Carolina, for Appellants. Christina Marie Summer, GIGNIL-
LIAT, SAVITZ & BETTIS, L.L.P., Columbia, South Carolina, for
Appellee. **ON BRIEF:** Kathryn Thomas, GIGNILLIAT, SAVITZ &
BETTIS, L.L.P., Columbia, South Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

## OPINION

PER CURIAM:

Firefighters Stan Whitten, Tony Deadwyler, and Kevin Nalley filed a lawsuit against their former employer, the City of Easley, South Carolina, alleging that the City violated the Fair Labor Standards Act (the "FLSA"), 29 U.S.C. § 201, et seq., by failing to pay them overtime for their "on call" hours. Whitten and Deadwyler also brought FLSA retaliation claims against the City of Easely. The district court granted summary judgment in favor of the City on both grounds, and this appeal followed. For the reasons that follow, we affirm.

I.

As firefighters for the City of Easley, Whitten, Nalley, and Deadwyler were required to work 24 and 48 hour shifts. For 365 days a year, City of Easley firefighters worked one 24 hour "on duty" shift followed by a 48 hour "on call" shift. During their "on call" days, the City encouraged firefighters to respond to 80% of second alarm calls. From January 1998 to July 2001, the City Fire Department received an average of 6 second-alarm calls per month, and thus, the City encouraged firefighters to respond to at least 4 second-alarm calls during the 18-19 days a month firefighters were "on call." However, the majority of firefighters, including Whitten, Deadwyler, and Nalley, rarely met this quota.

In order to facilitate quick responses to second-alarm calls, the City issued pagers to "on call" firefighters, which notified the "on call" employees of the location of the second-alarm call. In addition to pagers, the City also issued two-way radios and turn-out gear to firefighters; however, most firefighters relied on their pagers to notify them of second-alarm calls. Their ability to rely on the pagers to notify them of second-alarm calls allowed firefighters to pursue personal activities during their "on call" shifts. During "on call" days,

firefighters maintained part-time jobs, traveled to different states, went shopping, ate in restaurants and drank in bars, and pursued their personal hobbies and interests. In the event that a firefighter needed to take a day off when he or she was scheduled to be "on call," the Fire Department permitted firefighters to trade shifts with other firefighters.

In April 2001, Whitten, Deadwyler, and Nalley filed a complaint against the City of Easley, alleging, *inter alia*, that the City had failed to pay them overtime for their "on call" shifts. Whitten and Deadwyler also asserted FLSA retaliation claims. Whitten's FLSA retaliation claim is predicated in part on his belief that he was discharged in January 2001 for complaining about the City's failure to pay overtime for "on call" hours. Deadwyler's FLSA retaliation claim is based on his allegation that the City of Easley terminated him in July 2001 for filing this lawsuit and failing to divulge information about the lawsuit to the Chief of the City of Easley Fire Department.

In a written opinion filed April 2, 2002, the district court granted summary judgment for the City of Easley. In its opinion, the district court concluded that the City had not violated the FLSA by failing to pay Whitten, Deadwyler, and Nalley for their "on call" shifts. The district court also determined that Whitten's FLSA retaliation claim failed to establish a prima facie case. Lastly, the district court held that Deadwyler's acceptance of full-time employment with another company constituted a voluntary resignation from his position with the City of Easley Fire Department, and therefore, his FLSA retaliation claim also failed. Whitten, Deadwyler, and Nalley now appeal the district court's decision.

## II.

We review the district court's grant of summary judgment *de novo*, viewing all the facts and inferences in the light most favorable to the nonmoving party. *Haulbrook v. Michelin N. Am.*, 225 F.3d 696, 702 (4th Cir. 2001). Summary judgment is appropriate if "there is no genuine issue of fact as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

## III.

There are two issues that we must decide in this appeal. First, this Court must determine whether the City of Easley failed to compensate properly its firefighters for "on call" time. Second, we must assess whether Whitten and Deadwyler have adequately alleged FLSA retaliation claims. For the reasons that follow, we conclude that the district court's grant of summary judgment to the City of Easley was proper on all grounds.

## A.

The first issue is whether the firefighters' "on call" time is compensable under the FLSA. In order to determine "[w]hether time is spent predominantly for the employer's benefit or for the employee's," *Roy v. County of Lexington*, 141 F.3d 533, 544 (4th Cir. 1998), this Court must examine the following factors to weigh the level of interference with the employee's private life: (1) whether the employee may carry a beeper or leave home; (2) the frequency of calls and the nature of the employer's demands; (3) the employee's ability to maintain a flexible "on call" schedule and switch "on call" shifts; and (4) whether the employee actually engaged in personal activities during "on call" time. *See Kelly v. Hines-Rinaldi Funeral Home, Inc.*, 847 F.2d 147, 148 (4th Cir. 1998); *Ingram v. County of Buck*, 144 F.3d 265, 268 (3d Cir. 1998). As the Supreme Court has explained, "Facts may show that the employee was engaged to wait, or they may show that he waited to be engaged." *Skidmore v. Swift & Co.*, 323 U.S. 134, 136-37 (1944). If the employee was "engaged to wait," his or her "on call" time is compensable under the FLSA. *See id.* However, if the employee was "waiting to be engaged," the FLSA does not require employers to compensate its employees for this time. After reviewing the record evidence, this Court concludes that the City of Easley firefighters spent their "on call" time predominantly for their own benefit and therefore the time the firefighters spent "waiting to be engaged" is not compensable under the FLSA.

First, the firefighters carry pagers during their "on call" shifts to notify them of second-alarm calls, which enables them to pursue personal activities during those days. To this point, both Deadwyler and Nalley testified that they carried pagers and were able to travel out of

state to attend non-work related conferences as well as work part-time for other organizations during their "on call" shifts. Second, this Court would be hard pressed to conclude that the fire department's policy of encouraging firefighters to respond to 80% of second-alarm calls during their "on call" shifts is overly burdensome. The second-alarm call records from 1998-2001 indicate that "on call" firefighters received an average of 6 second-alarm calls per month. Of those 6 second-alarm calls, the City encouraged firefighters to respond to 4 second-alarm calls during the 18-19 days the firefighters were "on call." Because the 80% response rate was encouraged and not required, the majority of firefighters rarely met this quota. In fact, City of Easley firefighters, including Whitten, Deadwyler, and Nalley, rarely responded to 80% of the second-alarm calls in any given month. Given that the firefighters were generally unencumbered during their "on call" shifts, the requirement that they respond to at least 4 of 6 second-alarm calls per month is not overly burdensome. *Cf. Renfro v. City of Emporia*, 948 F.2d 1529, 1531 (10th Cir. 1991) (finding that firefighters were "engaged to wait" when they received on average four to five call-backs per day). Third, numerous courts have held that an employee's ability to trade shifts weighs against a finding that their "on call" time is unduly restrictive. *See Ingram*, 144 F.3d at 269. Here, it is undisputed that City of Easley firefighters may trade "on call" shifts with other firefighters. Because the firefighters' ability to trade shifts enables them to maintain a flexible "on call" schedule, this Court cannot conclude that the "on call" hours are onerous. Lastly, firefighters employed by the City of Easley are able to engage in personal activities during "on call" shifts with minimal interference. Contrary to appellants' assertions, "the test is not whether the employee has substantially the same flexibility or freedom he would if not on call," *Ingram*, 144 F.3d at 269, but rather "whether they may actually engage in personal activities during 'on call' shifts." *Berry v. County of Sonoma*, 30 F.3d 1174, 1184-85 (9th Cir. 1994). Here, the record is replete with evidence of appellants' freedom to enjoy personal activities such as dining, shopping, imbibing, traveling to out-of-state competitions, working in part-time jobs, and enjoying personal pursuits. Because the "on call" policy did not substantially impinge upon the firefighters' personal pursuits, this Court concludes that Whitten, Deadwyler, and Nalley are not entitled to compensation for their "on call" hours under the FLSA.

B.

Whitten and Deadwyler next contend that the City of Easley violated the FLSA by terminating them for engaging in protected activities. In order to assert a prima facie claim of retaliation under the FLSA, a plaintiff must prove: (1) that he or she engaged in an activity protected by the FLSA; (2) that he or she suffered adverse action by the employer subsequent to or contemporaneous with such protected activity; and (3) a causal connection existed between the employee's activity and the employer's adverse action. *See Conner v. Schnuck Markets, Inc.*, 121 F.3d 1390, 1394 (10th Cir. 1997). If the employee establishes a prima facie claim of retaliation, the employer must provide a legitimate reason for the adverse action. *Id.* Once the employer sets forth a non-discriminatory reason for its adverse reaction, the plaintiff may attempt to demonstrate the pretextual nature of the explanation proffered. *See id.* at 1394. Guided by the principles set forth above, it is clear that neither Whitten nor Deadwyler has satisfied his burden under the FLSA.

Whitten has failed to prove the first prong of the FLSA's prima facie case. To wit, Whitten cannot demonstrate that he was engaged in an activity protected by the FLSA. Whitten claims that the City of Easley discharged him because he complained to management that the fire department's failure to pay firefighters for their "on call" time was unlawful. However, this Court has expressly held that the FLSA's anti-retaliation provision does not extend to internal complaints. *See Ball v. Memphis Bar-B-Q Co., Inc.*, 228 F.3d 360, 364 (4th Cir. 2000) ("We would be unfaithful to the language of the testimony clause of the FLSA's anti-retaliation provision if we were to expand its applicability to intra-company complaints. . . ."). Furthermore, the City terminated Whitten in January 2001, approximately three months *before* plaintiffs filed this lawsuit. Therefore, Whitten cannot demonstrate that he suffered an adverse action "subsequent to or contemporaneous with" the filing of this complaint. *See Conner*, 121 F.3d at 1394. Thus, because Whitten cannot satisfy his prima facie burden under the FLSA, his claim fails.

Although Deadwyler satisfies his prima facie burden under the FLSA because he alleges that "he was first suspended and then fired for failing to divulge information related to this case," he cannot dem-

onstrate that the City of Easley's non-discriminatory reason for terminating him was pretextual. The City of Easley claims that it discharged Deadwyler after it learned that Deadwyler had accepted a full-time position with another company, thereby effectively tendering his resignation from his position as a City of Easley firefighter. As the district court aptly noted, "[a]ccepting a voluntary resignation for what appears to be the acceptance of another full time job cannot be considered a discharge in retaliation for protected FLSA retaliation." *Whitten v. City of Easley*, Ca. No. 8:01-0979-20, at 8 (D.S.C. filed April 3, 2002). Accordingly, this Court concludes that Deadwyler has failed to satisfy his burden under the FLSA.

## IV.

In conclusion, Whitten, Deadwyler, and Nalley have failed to demonstrate that they are entitled to compensation under the FLSA for their "on call" hours. Indeed, the FLSA does not require the City of Easley to compensate its firefighters for time spent "waiting to be engaged." Whitten and Deadwyler, furthermore, have not successfully proved their FLSA retaliation claims. Accordingly, for the reasons stated herein, we affirm the district court's grant of summary judgment to the City of Easley.

*AFFIRMED*